UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURIE KAY WELLS,<br><br>                Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>                Defendant. | Case No.: 1:15-cv-0285-JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF LAURIE KAY WELLS AND AGAINST DEFENDANT CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY |

Laurie Kay Wells asserts she is entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the record and seeks judicial review of the decision to deny benefits. Because the ALJ erred in evaluating the medical record related to Plaintiff's mental impairments, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. §405(g).

## PROCEDURAL HISTORY

Plaintiff filed applications for benefits on December 31, 2009 and January 5, 2010. (*See* Doc. 9-6 at 3-14.) The Social Security Administration denied Plaintiff's applications at both the initial level and upon reconsideration. (Doc. 9-4 at 2-3, 12-13.) After requesting a hearing, Plaintiff testified before an ALJ on June 8, 2011. (Doc. 9-3 at 105.) The ALJ concluded Plaintiff was not disabled and issued an order denying benefits on August 22, 2011. (Doc. 9-4 at 20-31.) Plaintiff's request for review by the Appeals Council was granted on September 18, 2012. (*Id.* at 38-40.)

The Appeals Council noted that Plaintiff submitted additional evidence from her treating physician, Dr. Ronald Sheldon, who identified "extreme degrees of limitation." (Doc. 9-4 at 38.) In light of the additional evidence, which included "mental health treatment records dated prior to the date of the hearing decision," the Appeals Council concluded "further consideration of the claimant's mental impairments [was] warranted." (*Id.*) Accordingly, the Appeals Council remanded the matter to an ALJ to obtain additional evidence regarding Plaintiff's mental impairments. (*Id.* at 39-40.)

On February 26, 2013, Plaintiff appeared at a hearing before a second ALJ. (Doc. 9-3 at 98.) However, Plaintiff requested a one-time postponement to obtain a representative. (*Id.* at 99.) After Plaintiff testified at a hearing on July 1, 2013, the ALJ issued an order denying her applications for benefits. (*Id.* at 29, 54.) The Appeals Council denied Plaintiff's request for review of the second decision on January 1, 2015. (Doc. 9-2 at 2.) Therefore the ALJ's determination that Plaintiff was not disabled became the final decision of the Commissioner of Social Security ("Commissioner").

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment

that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **ADMINISTRATIVE DETERMINATION**

The Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520, 416.920(a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider testimonial and objective medical evidence.  20 C.F.R. §§ 404.1527, 416.927.

**A.    Relevant Medical Opinions[1]**

On February 25, 2010, Dr. Khan reviewed the record and completed a psychiatric review technique form and mental residual functional capacity assessment.  (Doc. 9-12 at 2-19.)  Dr. Khan opined that Plaintiff suffered from a mixed personality disorder, and her "primary disorder" was a mood disorder with psychotic features.  (*Id.* at 7, 12.)  Dr. Khan observed that Plaintiff's "psychiatric condition waxes and wanes considerably depending on adequacy (and perception of adequacy) of pain control."  (*Id.* at 12, 19.)  Dr. Khan opined Plaintiff had moderate restriction of activities of daily living;

---

[1] The Court has read and considered the entirety of the medical record.  However, for purposes of its analysis, the Court herein summarizes only medical opinions that address Plaintiff's mental impairments.

3

mild difficulties with maintaining social functioning; and moderate difficulties with maintaining concentration, persistence, or pace. (*Id.* at 10.) According to Dr. Khan, Plaintiff was "not significantly limited" with the ability to understand, remember, and carry out "very short and simple instructions;" but had moderate limitations with "detailed instructions." (*Id.* at 14.) Dr. Khan believed Plaintiff was "not significantly limited" with all areas of social interaction. (*Id.*) Dr. Khan concluded Plaintiff could "sustain simple one-two step repetitive tasks with adequate pace and persistence, adapt and relate to coworkers and deal with changes in the routine public work setting." (*Id.* at 12, 19.)

Dr. Donald Cowell, a rheumatologist, completed a functional capacity questionnaire on April 30, 2010. (Doc. 10-6 at 4.) He noted that he first treated Plaintiff on August 5, 2008, and continued to do so "as needed." (*Id.*) Dr. Cowell diagnosed Plaintiff with "chronic widespread pain," and indicated Plaintiff suffered from impaired sleep, depression, and anxiety. (*Id.*) According to Dr. Cowell, Plaintiff was limited to sitting for six hours, standing and walking up to two hours, occasionally lifting less than ten pounds, and rarely lifting ten pounds. (*Id.*) He also specified Plaintiff could never crouch; rarely stoop or bend; and occasionally finger, grasp, and handle objects. (*Id.*) Dr. Cowell opined that Plaintiff's impairments would cause her to miss more than four days of work per month. (*Id.*)

On August 26, 2010, Dr. Lydia Kiger reviewed the record related to Plaintiff's physical impairments. (Doc. 9-12 at 79-80.) Dr. Kiger noted Plaintiff reported having low back pain with pain that radiated into her right leg "with numbness and tingling and burning of the sole of her right foot." (*Id.* at 80.) Also, she observed that an MRI of Plaintiff's back showed "ventral epidural lipomatosis at L5-SI compressing the thecal sac at the origins of the S1 nerve roots." (*Id.*) Thus, Dr. Kiger believed that "at least one aspect of [Plaintiff's] pain [was] objectively substantiated." (*Id.*) Further, Dr. Kiger noted Plaintiff was treated with "methadone and trigger point injections." (*Id.*) Giving Plaintiff "the benefit of the doubt," Dr. Kiger opined a limitation to light work was appropriate. (*Id.*)

On September 12, 2010, Dr. Helen Patterson reviewed the medical evidence and noted Plaintiff "indicate[d] worsening of depression and [had] received further treatment at the mental health center." (Doc. 9-12 at 81.) Dr. Patterson found the treatment notes did "not actually demonstrate objective signs of worsening," and "[n]o functional changes [were] reported." (*Id.*) She observed also that Plaintiff's appointments did not become more frequent, and she was not referred "for more intensive

treatment." (*Id.*) She concluded the limitations assessed by Dr. Khan "seem[ed] to encompass what [was] indicated in the updated record." (*Id.*) Therefore, Dr. Patterson "adopted" the conclusions of Dr. Khan. (*Id.*)

On April 6, 2011, Plaintiff had an initial medical evaluation for counseling services with Kings County. (Doc. 10-8 at 14.) Plaintiff reported that she had a history of substance use including alcohol, marijuana, and meth, and reported her psychiatric issues began "when trying to quit meth." (*Id.*) Dr. Brad Wajda noted that Plaintiff described "chronic feelings of emptiness, abandonment issues," anxiety, self-injury, and depression. (*Id.*) Dr. Wajda diagnosed Plaintiff with borderline personality disorder, avoidant personality disorder, obsessive compulsive personality disorder, and generalized social phobia. (*Id.* at 15.)

On September 9, 2011, Dr. Ronald Sheldon conducted an initial psychiatric evaluation and diagnosed Plaintiff with schizoaffective disorder and insomnia. (Doc. 10-7 at 29.) He completed a "Mental Impairment Questionnaire" on January 6, 2012. (Doc. 10-8 at 44- 47.) Dr. Sheldon noted Plaintiff had "a mood disorder in addition to psychotic features" because she reported hearing voices. (*Id.* at 45.) He indicated that Plaintiff's symptoms included mood disturbances, social withdrawal, illogical thinking, difficulty thinking or concentrating, delusions or hallucinations, sleep disturbances, persistent irrational fears, and generalized persistent anxiety. (*Id*. at 44-45.) He believed Plaintiff's hallucinations and sleep disturbances would cause her difficulty working at a regular job and that she would miss work more than three times a month. (*Id*. at 46-47.) Dr. Sheldon opined that Plaintiff had extreme restrictions in activities of daily living; extreme difficulties maintaining social functioning; constant deficiencies of concentration, persistence or pace; and continual episodes of decompensation. (*Id*. at 47.)

Dr. Michael Barnett conducted a psychiatric evaluation on October 20, 2012. (Doc. 10-8 at 54.) Plaintiff told Dr. Barnett that she was able to "dress and bath herself," do laundry, grocery shop, and cook. (*Id.*) She said she stopped working "due to an inability to concentrate." (*Id.*) Plaintiff explained that "she did well on medication and this enabled her to work, but then the medicine stopped working and so she was not consistently working and became disabled." (*Id.*) Plaintiff said she "hear[d] voices three times a week that tell her she is 'a bad person' and that she should be 'ashamed'" of herself. (*Id.*)

In addition, Plaintiff said she cried daily and "thought about suicide, but denied having plans to do so." (*Id.* at 55.) Dr. Barnett observed that Plaintiff appeared in "mild to moderate psychic distress," she exhibited a depressed mood, and "her affect was blunted." (*Id.*) Dr. Barnett determined Plaintiff's "recent memory was intact," but she was not able to "perform simple mathematical calculations." (*Id.*) According to Dr. Barnett, Plaintiff was "bipolar and antidepressant medications can make her more anxious and moody. Therefore, a thorough assessment of her current status is difficult to make." (*Id.*) Dr. Barnett concluded:

> The clamant would have difficulty being able to understand and remember simple or complex work-related instructions and tasks. The claimant would be unable to sustain focused attention and concentration long enough to complete routine work-related tasks in a timely and appropriate way without special or additional supervision. The claimant would be unable to interact independently, appropriately and effectively with coworkers, supervisors and the public. The claimant would have difficulty adapting to changes, hazards, or stressors in the work environment.

(*Id.* at 56.) In a separate check-box form, Dr. Barnett indicated Plaintiff had "marked" limitation with her ability to understand, remember, and carry out both simple and complex instructions. (*Id.* at 51.)

Dr. Sheldon completed a second "Mental Impairment Questionnaire" on April 26, 213. (Doc. 10-8 at 79-82.) Dr. Sheldon reported Plaintiff had "<u>a severe mental disorder.</u>" (*Id*. at 80, emphasis in original.) He explained Plaintiff would "get deeply depressed and had manias in the past," and believed Plaintiff's "severe mood disorder [would] prevent[] her from working." (*Id.*) Dr. Sheldon indicated Plaintiff's symptoms included sleep disturbance, personality change, mood disturbance, emotional lability, recurrent panic attacks, social withdrawal or isolation, decreased energy, difficulty thinking or concentrating, and psychomotor agitation or retardation. (*Id.* at 79-80.) He opined Plaintiff had marked restrictions in her activities of daily living; marked difficulties in maintaining social functioning; frequent deficiencies of concentration, persistence, or pace; and continual episodes of deterioration or decompensation. (*Id.* at 82.) Dr. Sheldon concluded Plaintiff was "[p]ermanently disabled" due to "chronic mental illness." (*Id.*)

**B.     Administrative Hearing Testimony**

Plaintiff testified before an ALJ on July 1, 2013. (Doc. 9-3 at 63.) She reported that she had a high school education and attended vocational training to work in medical offices. (*Id.*) Plaintiff said the she was last employed doing "in-home healthcare" for her mother-in-law who "was a dialysis

patient." (*Id.* at 64.)  She reported that she "had difficulties mentally" taking care of her mother-in-law, such as remembering "what bags of solution" to use. (*Id.*)  Plaintiff said "fixed all the meals," helped her take a shower, "did all the housework," and "took care of her medications," six months, but when Plaintiff "just couldn't handle it" and "stressed out," she had her husband or sister-in-law take over. (*Id.* at 64-65.)

Plaintiff believed she was not able to work on a full-time basis due to "severe pain in [her] back." (Doc. 9-3 at 70.)  She described the pain as "stabbing" in her low back, and "muscle spasms in [her] upper back." (*Id.*)  Plaintiff said she also had pain in her shoulders, hips, hands, knees, and feet. (*Id.* at 71-72.)  She reported that Dr. Dennis Smith treated her "for chronic pain," and he prescribed "psych meds" and "pain meds" to Plaintiff. (*Id.* at 67.)

In addition, Plaintiff testified that she had mental problems that impaired her ability to work. (Doc. 9-3 at 74-75.)  Plaintiff said she had "mood swings," and would "all of a sudden…be in tears for no -- for an unknown reason, or totally ticked off." (*Id.* at 74.)  Plaintiff stated she could "go days without sleeping." (*Id.* at 74, 75.)  She explained she was "extremely nervous" and felt like people were "watching" when she went to a store. (*Id.* at 76.)  As a result, Plaintiff said she tried to rush to leave a store and was "known to be a little rude" to cashiers who were "just not going fast enough" for her to leave quickly. (*Id.* at 76-77.)

Plaintiff said she saw a psychologist, Dr. Sheldon, "[a]bout every six weeks," as well as a counsel counselor for individual therapy at Kingsview Behavioral Health "[e]very two months." (Doc. 9-3 at 69.)  She reported she took Prozac for depression, an antipsychotic medication named Geodon, Ativan for anxiety, and Lithium "to help in the mood stabilizing and… with [her] sleep patterns." (*Id.* at 77-78.)

Vocational expert Stephen Schmidt (the "VE") testified after Plaintiff at the hearing and classified her past relevant work —using the *Dictionary of Occupational Titles*[2]—as a receptionist, DOT 210.382-014; benefits clerk, DOT 205.567-010; medical secretary, 201.362-010; and clerk typist,

---

[2] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).

1  DOT 203.362-010.  (Doc. 9-3 at 87-88.)  The VE opined that in these positions, Plaintiff obtained
2  several transferable skills, including "[c]ustomer service, keyboarding, computer operating, record
3  keeping, accounts payable, accounts receivable, payroll, medical terminology, medical office
4  procedures, [and] filing."  (*Id.* at 88-89.)

5        The ALJ then asked the VE to consider a hypothetical individual, who was the same age as
6  Plaintiff with the same "education and past work experience."  (Doc. 9-3 at 89.)  The ALJ explained the
7  person had "the residual functional capacity to perform light work." (*Id.*)  The person could "never
8  climb ladders, ropes or scaffolds;" but could "[o]ccasionally climb ramps or stairs."  (*Id.*)  Further, the
9  person was limited to "occasional bilateral overhead reaching." (*Id.*)  The VE opined a person with
10 such limitations could perform all of Plaintiff's past work.  (*Id.*)  In addition, the VE identified other
11 positions that required a light exertion, including administrative clerk, DOT 216.482-010; general
12 office clerk, DOT 209.562-010; and file clerk, DOT 206.387-034.  (*Id.* at 89-90.)

13       Next, the ALJ added limitations "to simple, routine, repetitive tasks, and occasional interaction
14 with the public, co-workers and supervisors."  (Doc. 9-3 at 90.)  The VE opined the mental limitations
15 would preclude the hypothetical person from performing Plaintiff's past relevant work.  (*Id.*)  However,
16 the VE explained the person could perform other work, such as electronics worker, DOT 726.687-010;
17 sewing machine operator, DOT 787.685-010; and packer, DOT 920.685-026.  (*Id.*)

18       Third, the ALJ asked the VE to consider a person who "possess[ed] the residual functional
19 capacity to perform sedentary work except due to a combination of medical conditions, pain and mental
20 impairments, this person [was] unable to engage in sustained work activity for a full eight hour
21 workday on a regular and consistent basis." (Doc. 9-3 at 90-91.)  The VE opined such a person could
22 not perform Plaintiff's past work or any other work in the economy.  (*Id.* at 91.)

23 **C.   The ALJ's Findings**

24       Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial
25 gainful activity after the alleged onset date of July 1, 2005. (Doc. 9-3 at 31.)  At step two, the ALJ
26 found Plaintiff's severe impairments included: "degenerative joint disease; ventral epidural lipomatosis
27 at L5-S1 compressing the anterolateral portions of the thecal sac at the origins of the bilateral S1 nerve
28 roots; hypertension; obesity; depression, schizoaffective disorder bipolar type, adjustment disorder,

anxiety disorder, and personality disorder, not otherwise specified." (*Id.* at 32.) At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing. (*Id.* at 32-34.) Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 461.967(b) except lift and carry 20 pounds occasionally and frequently 10. Never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs; occasionally stoop, kneel, or crawl; and occasional bilateral overhead reaching. The claimant is limited to simple, routine, and repetitive tasks. She can occasionally interact with the public, co-workers, and supervisors.

(*Id.* at 34.) Based upon this RFC, the ALJ concluded Plaintiff was "unable to perform any past relevant work." (*Id.* at 22, 41.) However, the ALJ determined "there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform," such as electronics worker, sewing machine operator, and packer. (*Id.* at 42.) Consequently, the ALJ found Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 42-43.)

## DISCUSSION AND ANALYSIS

Plaintiff asserts the RFC identified by the ALJ is not supported by substantial evidence. (Doc. 13 at 7-13.) With regard to her mental impairments, Plaintiff contends the ALJ did not offer "legally sufficient" reasons to reject the opinions of Drs. Sheldon and Barnett. (*Id.* at 9.) On the other hand, Defendant argues the ALJ properly rejected these opinions and argues the Court should find the RFC is supported by the opinion of Dr. Khan. (Doc. 18 at 7-11.)

**A.    The ALJ's Evaluation of the Medical Evidence**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A physician's opinion is not binding upon the ALJ, and may be discounted whether or not

another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). , Plaintiff contends the ALJ erred in evaluating the opinions of Dr. Sheldon, her treating physician, and Dr. Barnett, who performed a consultative examination. (Doc. 13 at 9-13.) Because Dr. Khan contradicted their opinions regarding Plaintiff's mental limitations, the ALJ was required to identify specific and legitimate reasons for rejecting the opinions.

The ALJ noted that Dr. Barnett examined Plaintiff and diagnosed her "with schizoaffective disorder, bipolar type, posttraumatic stress disorder, personality disorder, not otherwise specified." (Doc. 9-3 at 39.) In addition, the ALJ observed Dr. Barnett determined that Plaintiff "would have marked limitations in all areas of mental functioning." (*Id.*) The ALJ indicated she gave "[n]o significant weight" to the opinions, "as they are completely unsupported by the medical evidence of record that Dr. Barnett did not have the opportunity to review." (*Id.*)

The Ninth Circuit determined an ALJ may give less weight to the opinion of a physician when an ALJ finds inconsistencies with the physician's records and the ALJ explains why the opinion "did not mesh with [his] objective data or history." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Similarly, inconsistency with the overall record constitutes a legitimate reason for discounting a physician's opinion. *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 602-03 (9th Cir. 1999). However, to reject an opinion as inconsistent with the treatment notes or medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are

contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Id.*, 849 F.2d at 421-22.

Here, the ALJ failed to identify any specific inconsistencies between the findings of Dr. Barnett and the treatment notes, or explain how the "marked" limitations identified by Dr. Barnett were inconsistent with the record as a whole. Because the ALJ did not offer more than her conclusions that the opinion of Dr. Barnett was inconsistent with the treatment notes, the purported inconsistencies do not support the decision to give less weight to the opinion.[3] Importantly, this was the only reason offered to reject the opinion of Dr. Barnett, and as a result the ALJ failed to meet her burden to identify a specific and legitimate reason to reject the limitations to which Dr. Barnett opined.

### B.    The ALJ's Decision Lacks the Support of Substantial Evidence

When an ALJ rejects the opinions of physicians, the decision to do so must be supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31. The term "substantial evidence" "describes a quality of evidence ... intended to indicate that the evidence that is inconsistent with the opinion need not prove by a preponderance that the opinion is wrong." SSR 96-2p, 1996 SSR LEXIS 9 at *8[4]. "It need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.; see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

In rejecting the decisions of the treating and examining physicians, the ALJ gave "[s]ignificant weight" to the opinion of Dr. Khan, who reviewed the medical evidence and concluded Plaintiff could "sustain simple one-two step repetitive tasks, with adequate pace and persistent (sic), adapt and relate to coworkers and supervisors, and deal with changes in a routine public work setting." (Doc. 9-3 at 39, citing Exh. 6F, p.3 [Doc. 9-12 at19])  However, the ALJ did not adopt this limitation in the RFC,

---

[3] Similarly, the ALJ rejected the opinion of Dr. Sheldon, in part, because it was "no[t] supported by the treatment records." (Doc. 9-3 at 38.)  The ALJ failed to specifically identify inconsistencies between Dr. Sheldon's opinion that Plaintiff had "marked" and "extreme" limitations and the treatment notes.  (*See id.*)

[4] Social Security Rulings (SSR) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, the Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

instead limiting Plaintiff to "simple, routine, and repetitive tasks." (Doc. 9-3 at 34.) The ALJ offered no explanation for rejecting the opinion that Plaintiff was limited to "simple one-two step repetitive tasks." (*See id.*)

The distinction between one to two step tasks and "simple, routine, and repetitive tasks" is significant, because the Reasoning Level at which a claimant is expected to perform is changed under the *Dictionary of Occupational Titles*. Each job each job description in the *Dictionary of Occupational Tittles* includes a General Educational Development ("GED") definition that "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance" *Salas v. Astrue*, 2011 WL 2620370 at *5 (E.D. Cal. June 29, 2011), *quoting Grigsby v. Astrue*, 2010 WL 309013 at *2 (C.D. Cal. Jan. 22, 2010). The GED scale includes a scale for "reasoning development," which ranges from Level 1 (low) to Level 6 (high). *Id.* Reasoning Levels 1 and 2 require the following cognitive functioning:

> Level 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

*DOT*, Appendix C, Section III.

A one to two-step instruction limitation confines a worker to reasoning Level 1, while a limitation to simple, routine work encompasses both Reasoning Levels 1 and 2. As a result, with the limitations assessed by Dr. Khan, Plaintiff would be confined to work at Reasoning Level 1. *See e.g., Lara v. Astrue*, 305 Fed. Appx. 324, 326 (9th Cir. 2008) ("Reasoning Level 1 jobs are elementary. . . and someone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication—in other words, Reasoning Level 2 jobs"); *Salas*, 2011 U.S. Dist. LEXIS 69620 at * 21-22 (finding a mental RFC for simple routine work limited the claimant to Reasoning Levels 1 and 2); *Grigsby*, 2010 U.S. Dist LEXIS 5465 at *6-7 (explaining a limitation to simple, repetitive work encompassed the ability to perform jobs at Reasoning Level 2, but a limitation to one or two-step instructions limited an individual to Reasoning Level 1). Indeed, each job identified by the vocational expert based upon the RFC requires Reasoning Level 2. *See* DOT 726.687-010, 1991 WL 679633

(electronics worker); DOT 787.685-010, 1991 WL 681109 (sewing machine operator); and DOT 920.685-026, 1991 WL 687929 (packer). Thus, the opinion of Dr. Khan does not support the conclusion that Plaintiff is able to perform work in the national economy.

## C. Remand is Appropriate in this Matter

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the District Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed when no useful purpose would be served by further administrative proceedings, or where the record was fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, the ALJ failed to identify specific and legitimate reasons for giving rejecting the opinion of Dr. Barnett. Further, the RFC lacks the support of substantial evidence in the record. These errors impacted the testimony of the vocational expert, who was not asked questions regarding whether a claimant limited to "simple one-two step repetitive tasks" could perform the work in the national economy. Because the record is inadequate to determine if Plaintiff is disabled, the Court must remand the matter for the ALJ to re-evaluate the medical evidence and obtain additional testimony from a vocational expert, if necessary, to determine whether an individual with Plaintiff's limitations is able to perform work in the local and national economies.

## CONCLUSION AND ORDER

Given the ALJ's errors in evaluating the medical evidence, the administrative decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Because remand is appropriate on this matter, the Court declines to address the remaining issues raised in Plaintiff's opening brief.

Based upon the foregoing, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Laurie Wells and against Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **September 12, 2016**              **/s/ Jennifer L. Thurston**
                                           UNITED STATES MAGISTRATE JUDGE